OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Phung, Appellee and Cross-appellant, v. Waste Management, Inc., Appellant and Cross-appellee.

[Cite as Phung v. Waste Management, Inc. (1994), Ohio St. 3d .]

Witnesses -- Trial court abuses its discretion in denying request to present rebuttal witnesses, when.

(No. 93-936 -- Submitted October 11, 1994 -- Decided December 27, 1994.)

Appeal from the Court of Appeals for Sandusky County, No. S-91-48.

On April 30, 1981, appellee, Dr. Peter L. Phung, was discharged from his employment with appellant, Waste Management, Inc. ("WMI"). On June 1, 1983, Phung filed a wrongful-discharge claim and an intentional-infliction-of-emotional-distress claim against WMI in the Court of Common Pleas of Sandusky County. The trial court dismissed the wrongful-discharge claim for failure to state a cause of action. The Court of Appeals for Sandusky County reversed the trial court's dismissal. The Supreme Court of Ohio reversed the appellate court's judgment and reinstated the trial court's dismissal. Phung v. Waste Mgt., Inc. (1986), 23 Ohio St.3d 100, 103, 23 OBR 260, 263, 491 N.E.2d 1114, 1117.

On leave of the trial court, Dr. Phung amended the portions of his complaint addressing wrongful discharge. The trial court then dismissed both the wrongful-discharge and intentional-infliction-of-emotional-distress claims. The court of appeals affirmed the dismissal of the wrongful-discharge claim, but reversed the dismissal of the intentional-infliction-of-emotional-distress claim and remanded the cause to the trial court. Phung v. Waste Mgt., Inc. (1988), 40 Ohio App.3d 130, 532 N.E.2d 195. The Supreme Court of Ohio denied Dr. Phung's motion to certify the record. Phung v. Waste Mgt., Inc. (1988), 38 Ohio St. 3d 702, 532 N.E.2d 1317.

On remand to the trial court, Dr. Phung moved to proceed to trial on the dismissed wrongful-discharge claim. The trial

court overruled that motion and the case proceeded to trial on the intentional-infliction-of-emotional-distress claim. The jury returned a verdict in favor of WMI, and the trial court entered a judgment accordingly.

The court of appeals affirmed the trial court's decision not to proceed to trial on the dismissed wrongful-discharge claim. The appellate court, however, reversed the judgment entered on behalf of WMI because it found that, during trial, Phung was improperly denied the opportunity to present two witnesses to rebut the testimony of WMI's expert witness. The appellate court then ordered a new trial on Dr. Phung's intentional-infliction-of-emotional-distress claim.

This cause is now before this court upon a motion and a cross-motion to certify the record.

Murray & Murray Co., L.P.A., Dennis E. Murray, Sr., and Kirk J. Delli Bovi, for appellee and cross-appellant.

Vorys, Sater, Seymour & Pease, Thomas B. Ridgley and Gail C. Ford, for appellant and cross-appellee.

Pfeifer J.

## I

We must first determine whether the trial court abused its discretion when it denied Dr. Phung's request to present the testimony of his sister, Betsy Phung, and his first wife, Faye Phung, to rebut the testimony of WMI's expert witness, Dr. Elissa P. Benedek. For the following reasons we conclude that the trial court abused its discretion.

### A

When Dr. Phung's counsel indicated he would be calling the two witnesses, counsel for WMI objected, contending that the witnesses' rebuttal testimony would be cumulative and, thus, unnecessary. Additionally, WMI argued that Dr. Phung was precluded from presenting the witnesses because they were not on a witness list. We disagree with both of WMI's contentions.

#### 1
#### Cumulative Nature of Testimony

WMI contends the trial court was not required to permit Dr. Phung's sister and his first wife to testify because the two witnesses in their testimony would address those matters that Dr. Phung was permitted to address during his rebuttal testimony. Thus, WMI contends that the testimony of the two witnesses would have been cumulative and unnecessary.

Dr. Phung's counsel offered the testimony of Betsy Phung and Faye Phung, among other things, to rebut Dr. Benedek's testimony. During trial, Dr. Benedek concluded that Dr. Phung's delusional condition was caused and began to evidence itself prior to Dr. Phung's employment with WMI. Dr. Benedek based her conclusion on certain facts that she had learned from conversations with Dr. Phung and that she believed to be true: Dr. Phung observed dead bodies when living in Viet Nam, Dr. Phung threatened and beat his first wife, Dr. Phung's immigration was a stressful occasion, and Dr. Phung disputed the parentage of his first son when the child was born. Dr. Benedek believed these facts learned from Dr. Phung to be true because she claimed that she was able to separate fact from fiction as a trained clinician.

While it is true that Dr. Phung's rebuttal testimony contested the truth of these facts relied on by Dr. Benedek, this testimony was of minimal value. One of the few things that the parties agreed to at trial was that Dr. Phung was delusional, living in his own state of reality. Nevertheless, WMI argues that Dr. Phung was the ideal witness to refute the testimony of Dr. Benedek. We disagree. Dr. Phung should have been entitled to present non-delusional, rebuttal witnesses to contest the truth of the facts on which Dr. Benedek relied. The testimony of the two rebuttal witnesses was crucial, not cumulative, and should have been admitted by the trial court.

2

Requiring Rebuttal Witnesses to be on Witness Lists

WMI also contends that it was proper for the trial court to exclude the rebuttal testimony of Faye Phung and Betsy Phung because the two witnesses were not on the court's witness list. We disagree.

A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief. See Katz v. Enzer (1985), 29 Ohio App.3d 118, 29 OBR 133, 504 N.E.2d 427. Because the testimony of the two witnesses fulfills both of these criteria, it should have been admitted by the trial court.

The rebuttal witnesses were introduced to rebut matters first alleged in WMI's case-in-chief. During its case-in-chief, WMI presented Dr. Benedek's testimony to prove an alternative cause of Dr. Phung's delusional condition. The testimony of Faye Phung and Betsy Phung was offered to rebut the factual basis for Dr. Benedek's theory of an alternate cause.

The testimony of the two witnesses was properly offered in rebuttal and not in Phung's case-in-chief. Matters which the plaintiff bears the burden of proving are properly presented in plaintiff's case in chief. R.C. 2315.01. In a case for intentional infliction of emotional distress, a plaintiff must prove: (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. See Reamsnyder v. Jaskolski (1984), 10 Ohio St.3d 150, 10 OBR 485, 462 N.E.2d 392. Thus, in this case, Dr. Phung would be required to present evidence that WMI caused or exacerbated his mental distress. The testimony of Betsy Phung and Faye Phung, however, was not introduced to reinforce Dr. Phung's contention that WMI caused his delusional condition; instead, this testimony was offered to rebut WMI's contention that Phung's condition was caused by something other than his employment with WMI. Thus, the testimony of these witnesses was properly offered in rebuttal and not in Dr. Phung's case-in-chief.

Betsy Phung and Faye Phung were proper rebuttal witnesses. Dr. Phung had a right to present their testimony to the extent it rebutted Dr. Benedek's testimony. The fact that counsel for Dr. Phung never placed the names of the two witnesses on the court's witness list is immaterial.

When the trial court deprived Dr. Phung of his right to

call a rebuttal witness, it was acting in an unreasonable and arbitrary manner and, thus, abused its discretion.

B

WMI contends that even if the trial court erred when it refused to allow the two rebuttal witnesses to testify, the error was not prejudicial. WMI argues that even if the testimony of the two witnesses was offered to rebut Dr. Benedek's testimony about the causation of Dr. Phung's mental illness, the jury entered its verdict not because it agreed with Benedek's conclusion that WMI had not caused Dr. Phung's illness but because it found WMI did not breach the standard of care it owed to Dr. Phung. In support of its contention, WMI notes that the jury provided a negative answer to the following interrogatory:

"Do you find that plaintiff has proven by a preponderance of the evidence that defendant intended that its conduct would cause serious emotional distress to plaintiff or that defendant knew, or should have known, that its action would result in serious emotional distress to plaintiff?"

We disagree with WMI's interpretation of the jury's answer to this interrogatory. It is unclear why the jury answered the interrogatory the way it did. The jury could have agreed with Dr. Benedek's unrebutted assessment that Dr. Phung was already delusional when he began to work at WMI. Thus, the jury may have concluded that the employees of WMI could not have known that their behavior would likely cause emotional harm to Dr. Phung. In such a case, the jury would have answered "no" to the interrogatory, despite the fact that the interrogatory was worded to elicit the jury's determination of whether WMI breached its standard of care.

The negative answer to the jury interrogatory does not conclusively support WMI's contention that Dr. Phung was not prejudiced when the trial court failed to allow the rebuttal witnesses to testify.

Instead, it appears that the absence of witnesses to rebut those facts that Dr. Benedek relied on when she concluded that WMI did not cause Dr. Phung's delusional condition was very prejudicial. Faye Phung and Betsy Phung were the only two non-delusional witnesses at trial who were capable of testifying about those events that Dr. Benedek claimed had caused Dr. Phung's delusional disorder.

The trial court committed a reversible error when it failed to allow Faye Phung and Betsy Phung to testify as rebuttal witnesses to Dr. Benedek's testimony.

II

For the following reasons we determine that the doctrine of res judicata precluded the trial court from proceeding to trial on Dr. Phung's dismissed wrongful-discharge claim.

Section 19 of 1 Restatement of the Law, Judgments 2d (1982) 161, sets forth the following rule regarding the impact of res judicata when judgment is entered in favor of a defendant:

"A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."

By applying the Restatement rule to the present case, we hold that our 1988 decision to overrule Dr. Phung's motion to

certify the record constituted a valid and final judgment which dismissed Dr. Phung's wrongful-discharge claim.

The fact that our action was not a final disposition of Dr. Phung's entire case -- his intentional-infliction-of-emotional-distress claim remained remanded for trial -- is irrelevant. The Restatement of Judgments 2d, supra, at 134, Section 13, Comment e states in part that:

"[a] judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest."

When this court overruled Dr. Phung's motion to certify, res judicata precluded the relitigation of his wrongful-discharge claim but allowed his intentional-infliction-of-emotional-distress claim to continue.

Dr. Phung contends that public policy creates an exception to the law regarding finality of judgments and that he falls within this exception. We disagree.

In support of his contention, Dr. Phung notes that since his termination, the General Assembly has enacted Ohio's Whistleblower's Protection Act. R.C. 4113.51 through 4113.53. In oral argument, Dr. Phung's counsel noted that, after we denied Dr. Phung's motion to certify the record in Phung v. Waste Mgt., Inc. (1988), 38 Ohio St. 3d 702, 532 N.E.2d 1317, we broadened the public policy exception to the employment-at-will doctrine in Painter v. Graley (1994), 70 Ohio St.3d 377, 639 N.E.2d 51. Dr. Phung argues that his case should be reopened and this new law should be applied to his wrongful-discharge claim.

While we acknowledge that there is an exception to the rule of res judicata relating to subsequent developments in the law. This exception is extremely narrow and not applicable to Dr. Phung's case. In Natl. Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 558 N.E.2d 1178, this court held that:

"Generally, a change in decisional law which might arguably reverse the outcome in a prior civil action does not bar the application of the doctrine of res judicata. Since the doctrine of res judicata serves important public and private interests, exceptions to the doctrine's application should be narrowly construed." Id. at syllabus.

In Natl. Amusements, we examined an exception to res judicata when there has been "'a fundamental change in the controlling law.'" Id. at 62, 558 N.E.2d at 1180. While we acknowledged the existence of such an exception, we found that it was applicable only to some cases involving changes in constitutional law, such as school desegregation and racial discrimination. Id. at 63, 558 N.E.2d at 1181.

The recent developments in the law of wrongful discharge do not fall within this limited exception to the doctrine of res judicata. Thus, the court of appeals properly upheld the trial court's determination that Dr. Phung's wrongful-discharge claim had been terminated.

### III

Finally, we note the unfortunate irony of today's decision. Dr. Phung's brave efforts to stop WMI's conduct will go unrewarded. Although Dr. Phung's case catalyzed the General

Assembly to enact Ohio's Whistleblower's Protection Act, he will remain unable to obtain recourse through the statute that he inspired. He will, of course, be able to have a new trial on his intentional-infliction-of-emotional-distress claim. The law clearly mandates that the judgment of the court of appeals be affirmed and that this cause be remanded to the trial court.

Judgment affirmed
and cause remanded.

Moyer, C.J., A.W. Sweeney, Whiteside, Shannon, Farmer and F.E. Sweeney, JJ., concur.

Alba L. Whiteside, J., of the Tenth Appellate District, sitting for Douglas, J.

Raymond E. Shannon, J., of the First Appellate District, sitting for Wright, J.

Sheila G. Farmer, J., of the Fifth Appellate District, sitting for Resnick, J.