OPINION
{¶ 1} Plaintiff-appellant Hubert M. Shropshire, III, appeals from a decision of the Montgomery County Court of Common Pleas, which sustained the motion for summary judgment of defendant-appellee West American Insurance Company (hereinafter "West American") on April 28, 2004. Shropshire filed a notice of appeal with this Court on May 27, 2004.
 I {¶ 2} We set forth the history of the case in Shropshire v.EMC/Hamilton Mut. Ins. Co. (Oct. 5, 2001) Montgomery App. No. 18803, 18814 (hereinafter "Shropshire I"), and repeat it herein in pertinent part:
 {¶ 3} "Hubert M. Shropshire, III, was injured in a collision with another vehicle while operating a motorcycle owned by his father. Shropshire was then employed by M H Service Center, a business owned by his father, Hubert M. Shropshire, Jr., and a partner, Sam Haupt. Shropshire was on personal business when he was injured."
 {¶ 4} "West American Insurance Company had issued a commercial liability insurance policy to `Sam Haupt and Hubert M. Shropshire, Jr., dba M H Service Center.' The policy covered `garage operations.' The policy defined garage operations to include `the ownership, maintenance or use' of covered autos. The policy also covered liability of employees of M H Service Center in certain limited circumstances. The policy disclaimed any automobile coverage. It contained no UM/UIM coverage."
 {¶ 5} "Shropshire collected policy limits from that tortfeasor's insurer. He also demanded underinsured motorist benefits from Progressive Insurance Company under a liability policy in which he was a named insured. Shropshire next claimed underinsured motorist benefits from West American under the policy it issued to M H Service Center. Progressive agreed to provide coverage but only secondary to West American's duty of coverage. West American declined coverage." Shropshire I, supra.
 {¶ 6} Pertinent to this appeal, West American filed its first motion for summary judgment on September 26, 2000. The trial court sustained West American's motion on January 17, 2001, holding that even assuming that the West American policy provides UM/UIM coverage, Shropshire is not an insured under the policy, and thus, not entitled to coverage. Shropshire appealed the adverse summary judgment, and on October 5, 2001, we issued a decision which reversed and remanded the decision of the trial court. In particular, we held that because the commercial policy provided by West American could be classified as an automobile liability policy for purposes of R.C. § 3937.18 and did not offer UM/UIM coverage, said coverage arose by operation of law. Thus, despite the fact that Shropshire was not a named insured, his relationship as son of Hubert Shropshire, Jr. (one of the named insureds) entitled him to coverage.
 {¶ 7} Upon remand, West American filed a second motion for summary judgment which was overruled by the trial court on March 11, 2003. On November 5, 2003, the Supreme Court of Ohio issued its opinion inWestfield Ins. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849. Galatis
expressly limited the holding in Scott-Pontzer v. Liberty Fire MutualInsurance Company (1999), 85 Ohio St.3d 660. In Galatis, the Supreme Court held that, absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs during the course of employment.Id.; Jordan v. Armsway Tank Transport Inc., Darke App. No. 1621,2004-Ohio-261, ¶ 10.
 {¶ 8} In light of this decision, West American filed another motion for summary judgment on November 13, 2003. Initially, the trial overruled West American's renewed motion on February 19, 2004. West American then filed a motion for reconsideration on March 1, 2004. In a decision filed on April 28, 2004, the trial court sustained West American's motion for reconsideration based on the holding in Galatis, supra. It reasoned that the Galatis decision was an intervening decision which permitted the trial court not to apply the law of the case doctrine and, accordingly, to disregard our prior appellate ruling.
 {¶ 9} It is from this judgment that Shropshire now appeals.
 II {¶ 10} Shropshire's sole assignment of error is as follows:
 {¶ 11} "THE TRIAL COURT ERRED [BY] DEVIATING FROM THE APPELLATE MANDATE [OF] THE DISTRICT COURT OF APPEALS."
 {¶ 12} In his only assignment of error, Shropshire contends that the trial court was bound by our opinion in Shropshire I, and that the court erred when it failed to follow the law of the case doctrine by sustaining West American's motion for reconsideration.
 {¶ 13} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. ViockStowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, 467 N.E.2d 1378.
 {¶ 14} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 {¶ 15} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 {¶ 16} The Supreme Court of Ohio has summarized the doctrine of the law of the case, stating that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and
 {¶ 17} reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3-4. Considered by the Supreme Court to "be a rule of practice rather than a binding rule of substantive law," the rule is necessary to "ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." State ex rel. Potain v. Matthews
(1979), 59 Ohio St.2d 29, 32. However, application of the rule should not produce an unjust result. Gohman v. St. Bernard (1924), 111 Ohio St. 726,730-31, overruled on other grounds.
 {¶ 18} In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Charles A.Burton, Inc. v. Durkee (1954), 162 Ohio St. 433. Where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.Nolan, supra. Moreover, the trial court is without authority to extend or vary the mandate given. Briggs v. Pennsylvania RR. Co. (1948),334 U.S. 304, 306.
 {¶ 19} Although Ohio courts have continued to reaffirm the existence of the law of the case doctrine, they have also consistently noted that intervening decisions of superior courts present an exception to the doctrine. State ex rel. Davis v. Cleary (1991), 77 Ohio App.3d 494. The Supreme Court of Ohio has held that "a lower court has no discretion, absent extraordinary circumstances, to disregard the mandate of a superior court in a prior appeal in the same case. An example of such a circumstance would be where a holding of the Court of Appeals is inconsistent with an intervening decision by this court." Potain, supra. The above holding was later reiterated by the Supreme Court in the syllabus of Nolan, supra.
 {¶ 20} The Supreme Court has stated that "the general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." Peerless Electric Co. v.Bowers (1955), 164 Ohio St. 209. (This Court notes that the Supreme Court acknowledged that Scott-Pontzer was "wrongly decided.")
 {¶ 21} In support of his assertion that Shropshire I had become a final mandate and that the trial court lacked authority to applyGalatis, Shropshire relies on language in our first opinion, to wit;
 {¶ 22} "Here, as in Scott-Pontzer, the claimant is an employee of a named insured which is a business entity. Even so, it is a partnership of two natural persons, not a corporation. In Scott-Pontzer, the policy expressly provided UM/UIM coverage. Here, it is impressed by operation of law. We need not decide the effect of those differences on the issues before us, however, because Shropshire's status as an insured for purposes of UM/UIM coverage is determined by the rule of Demetry [v. Kim], supra [(1991), 72 Ohio App.3d 692,], as approved by Selander [v. ErieIns. Group], supra [(1999), 85 Ohio St.3d 541]."
 {¶ 23} Where a policy of liability insurance provides coverage for injuries and losses arising from the operation of a motor vehicle, even in limited circumstances, UM/UIM coverage must be tendered by the insurer. Selander, supra. Failure to do so results in the creation of UM/UIM coverage by operation of law. Id. When that occurs, "there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured coverage from being broader than liability coverage." Id., quoting Demetry, supra at 698.
 {¶ 24} This Court in Shropshire I interpreted Selander and Demetry to stand for the proposition that UM/UIM coverage which arises by operation of law in an automobile liability policy is for the benefit of any named insured and any other person who by reason of his or her relationship to the named insured is also an insured for purposes of liability coverage. Since UM/UIM coverage arose by operation of law, none of the circumstantial exclusions applicable to liability coverage to which the parties agreed apply to UM/UIM coverage impressed on the policy. Thus, Shropshire argues that Galatis, supra, has no application in the instant case because the "circumstantial exclusion" with respect to whether the employee was acting within the course and scope of employment when the accident occurred does not exist when UM/UIM coverage arises by operation of law. We disagree.
 {¶ 25} In Hopkins v. Dyer (2004), 104 Ohio St.3d 461, 820 N.E.2d 329,2004-Ohio-6769, the Supreme Court addressed a similar situation to the case at bar. In that case, the plaintiff, Hopkins, was employed at a fast-food restaurant when she was struck by a motor vehicle while riding her bicycle. Hopkins was not acting within the scope and course of employment when she was injured. Id. Her employer had a comprehensive general liability insurance policy and a comprehensive catastrophic liability insurance policy issued by defendant insurer. Id.
 {¶ 26} After defendant insurer filed a declaratory judgment action to determine whether Hopkins was entitled to coverage under the policies, the trial court concluded that Hopkins was not entitled to UM/UIM coverage because she was not an insured under the liability policies.Id. The court of appeals reversed, holding that defendant insurer had been obligated to offer UM/UIM coverage but failed to do so. Id. Thus, coverage arose by operation of law under R.C. § 3937.18. Id. The appellate court further held that pursuant to Scott-Pontzer, Hopkins was an insured for purposes of UM/UIM coverage under both policies. Id.
 {¶ 27} The trial court reiterated the decision of the appellate court, concluding that Hopkins was an insured under both policies and that the policies provided coverage by operation of law pursuant toScott-Pontzer. Moreover, the court held that because UM/UIM coverage arose by operation of law, none of the circumstantial exclusions in the liability policies applied. Id. The trial court relied on the conclusions of the appellate court as constituting the law of the case. Id. On appeal, the Fifth District affirmed the decision of the trial court and denied defendant insurer's subsequent motion for reconsideration, holding that the law of the case doctrine precluded the application of the recently decided Galatis.
 {¶ 28} The Supreme Court, however, did not focus on whether UM/UIM coverage arose by operation of law. Instead, the Court stated that the "threshold issue was whether the employee seeking coverage was acting within the course and scope of employment at the time of the accident."Hopkins, supra. As a result, the Court found that, as a matter of law, Hopkins did not qualify as an insured for purposes of UM/UIM coverage under her employer's insurance policies. In doing so, the Court further held that Galatis, supra, constituted an intervening decision by a superior court that was inconsistent with the law of the case. Thus, the Fifth District should have followed Galatis. Id.
 {¶ 29} In the instant case, this Court in Shropshire I relied onSelander,[1] supra, not Scott-Pontzer, when it found that UM/UIM coverage arose by operation of law. Regardless, the Galatis court unequivocally held that the determining factor was whether the employee seeking coverage was acting within the course and scope of employment at the time of the accident. Shropshire admits that he was not.
 {¶ 30} The commercial policy in question was for the benefit of the named insureds, Hubert Shropshire, III, and Sam Haupt, dba M H Service Center, as well as the employees of M H while they were acting within the course and scope of their employment. We were correct in Shropshire I when we found that under Selander, UM/UIM coverage arose by operation of law. Moreover, we correctly held that said coverage extended to Shropshire in light of his relationship to one of the named insureds. However, the Supreme Court's subsequent holding in Galatis changed the nature of the initial inquiry to whether the employee was acting within the course and scope of his or her employment when the accident occurred. When acting in his capacity as an employee of M H Service Center, Shropshire is clearly entitled to coverage under the commercial policy at issue. Shropshire, however, was on personal business when he was injured and is not covered under the policy.
 {¶ 31} In Shropshire I, we noted that in Scott-Pontzer, the policy expressly provided UM/UIM coverage, but that in the policy in question, the same coverage arose by operation of law. On that basis, Shropshire asserts that no conflict exists between his case and Galatis, supra, thereby necessitating an abandonment of the law of the case doctrine. Shropshire, however, ignores the fact that following Galatis, courts cannot find coverage in a corporate insurance policy for an employee acting outside the scope of his or her employment without specific language providing such coverage. Here, no such language exists, and we must conclude that Shropshire is not entitled to coverage under the commercial policy issued to M H Service Center.
 {¶ 32} Lastly, Shropshire argues that the law of the case doctrine applies because the issue of insurance coverage was the subject of a final judgment, and res judicata bars any reopening of that judgment. "It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.'" Natl.Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62,558 N.E.2d 1178, quoting, Rogers v. Whitehall (1986), 25 Ohio St.3d 67, 69,494 N.E.2d 1387, 1388. "Res judicata is a substantive rule of law that applies to a final judgment, whereas the law of the case doctrine is a rule of practice analogous to estoppel. Hopkins at ¶ 22, citing, Gohmanv. St. Bernard (1924), 111 Ohio St. 726, 730, 733, 146 N.E. 291.
 {¶ 33} In his brief, Shropshire argues that our decision inShropshire I finding that he was an insured under the West American policy and thus, entitled to coverage was a final judgment, and any relitigation of those issues is barred. Shropshire argues that on remand, the only issue that needed to be addressed by the trial court was the amount of damages owed to him from West American. In support of his argument that res judicata applies to preclude the application ofGalatis, Shropshire cites Phung v. Waste Mgt, Inc. (1994),71 Ohio St.3d 408, 1994-Ohio-389. In Phung, the Supreme Court held "* * * the trial court was precluded from considering on remand the plaintiff's wrongful-discharge claim where that claim had been dismissed and the dismissal had been affirmed on appeal. Although Phung's claim for intentional infliction of emotional distress remained pending, * * * [the Court] held that dismissal of the wrongful-death claim constituted a final judgment on that particular cause of action, and res judicata applied to bar relitigation." Phung at 412-413.
 {¶ 34} In Hopkins, supra, the Supreme Court declined to apply the doctrine of res judicata concluding the doctrine of the law of the case applied, not res judicata, because there no final judgment as to insurance coverage in that the trial court still had to decide various defenses.Hopkins, supra, at ¶ 22. The fact that issues remain pending, whether they be coverage issues or issues regarding the apportionment of damages, precludes the application of the doctrine of res judicata. Thus, we reject Shropshire's contention that res judicata applies in this matter. As explained by the Supreme Court in Cleveland Elec. IlluminatingCo. v. Pub. Utilities Comm. of Ohio (1976), 46 Ohio St.2d 105, 110,346 N.E.2d 778, a "remand" is:
 {¶ 35} "To send back to the original tribunal for further proceedings, generally upon orders or directions from the higher court. When a court acts to remand a cause, it is not itself finally determining the outcome of the cause, nor is it executing a judgment in favor of one of the parties. The judgment is given legal effect when it is executed by the lower tribunal to which the cause had been remanded."
 {¶ 36} Accordingly, we hold that the Galatis decision constituted extraordinary circumstances that created an exception to the law of the case doctrine. The trial court was correct when it sustained West American's motion for reconsideration on that basis. Thus, we affirm the judgment of the trial court that found Galatis to be an intervening decision that effectively overruled our decision in Shropshire I.
 {¶ 37} Shropshire's sole assignment of error is overruled.
 III {¶ 38} Shropshire's sole assignment error having been overruled, the judgment of the trial court is affirmed.
Grady, J. and Young, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] It is worthy of note that in Selander, supra, the employees received their injuries while in the course and scope of their employment.